UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Cause No. 1:12-CR-88-HAB |
| ) | |
| PEDRO GARZA ) | |

**OPINION AND ORDER**

After a series of controlled drug buys, Defendant, Pedro Garza, pled guilty to possession with intent to distribute cocaine and received a sentence of 188 months' imprisonment. He now moves for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i), arguing that extraordinary and compelling reasons exist for his immediate release. The motion has been fully briefed (ECF Nos. 195, 203) and is ripe for ruling.[1]

**I.     Factual and Procedural Background**

Between November 7 and December 3, 2012, an undercover Fort Wayne Police Department Vice and Narcotics detective (UC) and a cooperating individual (CI) engaged in a series of controlled buys from Garza. On November 7, 2012, the UC met with Garza and bought 25.7 grams of suspected cocaine for $1,300.00; on November 19, 2012, the UC purchased 13.7 grams of suspected cocaine for $650.00; on November 27, 2012, the UC purchased 55 grams of

---

[1] Garza has also filed a motion for appointment of counsel to assist with his compassionate release request. (ECF No. 196). This Court invoked its General Order 2020-11 and referred the Defendant's request to the Northern District of Indiana Federal Community Defender ("FCD") to "consider representing the Defendant with respect to the Motion." (ECF No. 198). Thereafter, the FCD filed a Notice on Non-Representation indicating that it would be unable to assist the Defendant. (ECF No. 200). Whether to appoint counsel is a matter for the Court's discretion. *See United States v. Tidwell*, 178 F.3d 946, 949 (7th Cir. 1999) ("How a district judge elects to consider a § 3582(c) motion to reduce a sentence is largely a matter of discretion. The judge can appoint counsel for a movant, but need not do so."). The Court DENIES Garza's request for counsel. (ECF No. 196).

suspected cocaine; and on December 3, 2012, the UC met with Garza and another individual, Juarez-Cabrera, and purchased 427 grams of marijuana.

On December 6, 2012, the UC and CI, both of whom were fluent in Spanish, met with Garza at a grocery store on Broadway Street in Fort Wayne, Indiana. The recorded meeting included discussions between the UC and Garza in which the UC expressed interest in buying a kilogram of cocaine for $38,500. Through text messages and recorded cellular telephone conversations between the CI and Garza, the deal was scheduled for December 11, 2012. Around 2:30 pm that day, Garza communicated with the CI that he was ready to make the sale. Garza was parked in Lowes parking lot on Lima Rd. in Fort Wayne, Indiana. Surveillance units in the area observed Garza in a 1999 blue, Chevrolet Malibu, bearing Indiana license plate 725LRE with another male, identified as Juarez-Cabrera.

At around 3:15, the UC, equipped with an electronic listening and recording device, drove to Lowes and met with Garza outside the Malibu. The two engaged in conversation and the UC requested to see the cocaine. Garza indicated the cocaine was in the Malibu. The UC entered the back seat of the Malibu, Garza was in the front passenger seat, and Juarez-Cabrera was in the driver seat. After more discussion, Garza showed the UC a grayish bag containing a clear plastic bag with a white powdery substance inside that was located in the front seat between Garza and Juarez-Cabrera. Garza and Juarez-Cabrera then held the bag open for the UC to see and smell the cocaine. The UC then got out of the vehicle and gave the pre-determined take-down signal to the surveilling units.

Uniformed narcotics detectives and FWPD's Emergency Services Team in marked raid vests, pulled behind the Malibu. A high-speed chase ensued with Garza and Juarez-Cabrera tossing items out the window during their pursuit. This included two cell phones and the grey and black

bag containing the cocaine. These items were later recovered from the roadway. Eventually, the Malibu struck a fence, the two men exited the vehicle and both were apprehended.[2]

Garza and Juarez-Cabrera were indicted in a five-count indictment with various drug trafficking offenses. After pleading guilty to Count 5 of the indictment, Garza was determined to be a career offender and his offense level was increased from 23 to 34 with a criminal history category of VI. Garza's corresponding guideline range was 188-235 months. On April 9, 2015, Garza was sentenced to 188 months imprisonment. He is currently incarcerated at USP Tucson in Tucson, Arizona with an anticipated release date of July 7, 2026.

## II. Legal Discussion

### A. *Compassionate Release Standard*

Defendant's motion requests compassionate release. Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which allows a court to grant an inmate compassionate release if the inmate meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A). Under this provision, a court may not modify a term of imprisonment except that –

> (1) in any case --
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction …
>
> … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

---

[2] Juarez-Cabrera fled on foot after the Malibu struck the fence.

Because Defendant, not the Director of the BOP, filed the motion, Defendant must first show that he has satisfied the statutory exhaustion requirement. The Government concedes that Defendant has properly exhausted his remedies. (ECF No. 203 at 2).

Congress did not define "extraordinary and compelling reasons" in the statute, instead delegating the matter to the Sentencing Commission to promulgate a policy statement that "describe[s] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The policy statement, in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes, have not been amended to reflect the First Step Act's change to § 3582(c)(1)(A) allowing prisoners to bring compassionate release claims directly. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)[3]. As a result, "§ 1B1.13 and its application notes provide useful – but not binding – guidance to courts in determining whether a defendant has identified an extraordinary and compelling reason for compassionate release." *United States v. Hoskins*, No. 2:99 CR 117, 2020 WL 7640408, at *2 (N.D. Ind. Dec. 23, 2020) (citing *Gunn*, 938 F.3d at 1180). Indeed, "[d]istrict judges must operate under the statutory criteria–'extraordinary and compelling reasons'–subject to deferential appellate review." *Gunn,* 980 F.3d at 1181.

Using the guidance of §1B1.13 to inform the statutory criteria, the court considers the medical condition of the defendant, his age, his family circumstances, and whether there is in the defendant's case an extraordinary or compelling reason "other than or in combination with" the other reasons described in the Application Notes. Second, the Court determines whether the

---

[3] Yet as *Gunn* made clear, the Guidelines' requirement that the court consider whether the reduction is otherwise "consistent with this policy statement" does not limit a district judge's discretion. This is because the statute by which the district court is bound requires a reduction to track "applicable policy statements." And the Sentencing Commission has not yet issued a policy statement "applicable" to Defendant's request. Thus, *Gunn* held, "[a]ny decision is 'consistent with' a nonexistent policy statement." *Gunn*, 980 F.3d at 1180

defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court considers the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

*1. Defendant's Sentence is not an Extraordinary or Compelling Reason for Release*

Garza first asserts that his 188-month sentence is unreasonable given the current state of the law. He asserts that under *Johnson v. United States*, 576 U.S. 591 (2015), two of his three predicate offenses used to apply the career offender sentencing provisions would no longer be valid predicate convictions today. He contends that his advisory guideline range would be 92-115 months today. Thus, Garza's argument is that the sentencing disparity between the sentence he received and the sentence he might receive if he was sentenced today establishes an extraordinary and compelling reason to release him.

In response, the Government points out that the *Johnson* decision was a non-retroactive Supreme Court decision, and even if it wasn't, a change in the case law is not a proper basis for compassionate release. *United States v. Carr*, 2022 WL 1421441, at *1 (7th Cir. May 5, 2022) ("Changes in sentencing law are not extraordinary and compelling reasons for compassionate release."). Rather, these arguments should be raised on collateral attack rather than in a compassionate release petition. *See United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021). The Government is correct.

"When deciding whether 'extraordinary and compelling reasons', 18 U.S.C. § 3582(c)(1)(A)(i), justify a prisoner's compassionate release, judges must not rely on non-retroactive statutory changes or new judicial decisions ... There's nothing 'extraordinary' about new statutes or caselaw, or a contention that the sentencing judge erred in applying the Guidelines; these are the ordinary business of the legal system, and their consequences should be addressed by

direct appeal or collateral review under 28 U.S.C. § 2255. *United States v. King*, —— F. 4th ——, 2022 WL 2663277, at *1 (7th Cir. July 11, 2022) (cleaned up); see also, *United States v. Watts*, 2022 WL 2208517, at *1 (7th Cir. June 21, 2022) (The court "lacks discretion under § 3582(c)(1)(A)(i) to reduce a statutory-minimum sentence asserted to be unfairly long. The appropriate path for prisoners to contest the length of their sentences is set forth in 28 U.S.C. § 2255"); *Thacker*, 4 F.4th at 574 (holding that non-retroactive change to statutory mandatory minimum sentence was not extraordinary and compelling reason for relief under § 3582(c)(1)(A)(i)); *United States v. Martin*, 21 F.4th 944, 946 (7th Cir. 2021) (a defendant must raise any challenge to his original sentence in a direct appeal or collaterally through 28 U.S.C. § 2255, not by way of a compassionate-release motion). Thus, the mere fact that the Defendant's sentence could be lower if he was sentenced today rather than at some time in the past, is not an extraordinary and compelling reason for compassionate release.

The Supreme Court's recent decision in *Concepcion v. United States*, 142 S. Ct. 2389, 2404 (2022) does not alter the above conclusion. *Concepcion* addressed § 404 of the First Step Act (FSA), which allows a district court to resentence a defendant in certain situations while compassionate release is governed by §603 of the FSA. As recently explained by the Seventh Circuit:

> That the First Step Act did multiple things—lowering sentences for some cocaine cases, enabling prisoners to seek compassionate release on their own motions, and more—does not mean that every decision about any aspect of the First Step Act applies to every potential question under that statute. The First Step Act did not create or modify the "extraordinary and compelling reasons" threshold for eligibility; it just added prisoners to the list of persons who may file motions. We take the Supreme Court at its word that *Concepcion* is about matters that district judges may consider when they resentence defendants. So understood, *Concepcion* is irrelevant to the threshold question whether any given prisoner has established an "extraordinary and compelling reason for release."

*King*, 40 F.4th at 596. Thus, Garza has not demonstrated that a sentencing disparity is an extraordinary and compelling reason supporting compassionate release.

    2. *Defendant's Medical Conditions and the Risk of COVID-19 are not Extraordinary and Compelling Reasons*

Next, Garza presents several reasons in support of his request for compassionate release, all of which relate to COVID-19 and the BOP's response to it. Garza asserts that the BOP failed to exercise proper care and he was infected with COVID-19, and continues to experience long-COVID symptoms, including nausea, hot and cold flashes, fatigue, and body aches. He believes the long-term implications of COVID-19 are not known and his heart may have been damaged by the virus. (ECF No. 195 at 12-13). He complains that while he has been vaccinated and boosted,[4] correctional officers at the BOP have not and so he is continually exposed to unvaccinated individuals and a continuing threat to be reinfected.

This Circuit's firm precedent has established that for most prisoners, the availability of a vaccine "makes it impossible to conclude" that the risk of COVID-19 infection is an extraordinary and compelling reason warranting compassionate release. *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021); *United States v. Kurzynowski*, 17 F.4th 756, 760–61 (7th Cir. 2021) ("Vaccinated prisoners in 2021 do not face the same risks of serious illness as they did in 2020."). While there are exceptions, for instance where a prisoner is unable to receive or benefit from a vaccine, *United States v. Clemons*, 2022 WL 1436801, at *2 (7th Cir. May 6, 2022), "impossible" is a high bar to overcome. Garza has not even approached that bar.

Garza asserts that he is obese, weighing in consistently at over 300 lbs at 5'9" tall. He also asserts that he is hypertensive and has "pre-diabetes". Yet, Garza's medical records reveal that he has been counseled about his weight management and his other conditions are controlled and

---

[4] Garza received the Moderna vaccine on March 17, 2021, April 13, 2021, and November 10, 2021.

managed with medication and insulin provided by the BOP. So too, his medical records lack any indication of the long-COVID symptoms he claims he continues to suffer; rather, some of the medical records show that Garza denied having many of the conditions he asserts in his motion. Thus, the Court has little trouble concluding that neither his medical conditions or his allegations of long haul COVID symptoms are extraordinary or compelling. *See, e.g.*, *United States v. Barbee*, 25 F.4th 531, 533 (7th Cir. 2022) (upholding denial of compassionate release motion where prisoner cited Type II diabetes, hypertension, and obesity as risk factors for "lethal complications" from COVID-19, finding the request was foreclosed by the availability of an effective vaccine).

In sum, neither Garza's sentence or his health conditions, either alone or in combination, are extraordinary and compelling circumstances warranting release.

*c. Application of the § 3553(a) Factors and the Defendant's Danger to the Community*

Given the determination that Garza has not shown extraordinary and compelling reasons to justify his release, the Court need not address whether he is a danger to the community and whether the sentencing factors listed in 18 U.S.C. § 3553(a) weigh in favor of his release. *United States v. Ugbah*, 4 F.4th 595, 598 (7th Cir. 2021).

## **CONCLUSION**

For the above reasons, the Defendant's Motion for Compassionate Release under 18 U.S.C. §3582(c)(1)(A) is DENIED. (ECF No. 195). The Defendant's Motion for Appointment of Counsel (ECF No. 196) is also DENIED

SO ORDERED on October 12, 2022.

      s/ *Holly A. Brady*
     JUDGE HOLLY A. BRADY
     UNITED STATES DISTRICT COURT