UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | Cause No. 1:12-CR-88-HAB |
| ) | |
| PEDRO GARZA ) | |

**OPINION AND ORDER**

After a series of controlled drug buys, Defendant, Pedro Garza, pleaded guilty to possession with intent to distribute cocaine and received a sentence of 188 months' imprisonment. For the second time, he moves for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i), "incorporate[ing] by reference his previous motion for compassionate release, in its entirety, with the exception of COVID-19 related points." (Am. Motion, ECF No. 224). Garza believes that the Court erred in determining that he was not entitled to relief under the non-retroactive Supreme Court decision in *Johnson v. United States*, 576 U.S. 591 (2015). The motion has been briefed (ECF Nos. 224, 231)[1]) and is ripe for ruling.

**I.  Factual and Procedural Background**

Between November 7 and December 3, 2012, an undercover Fort Wayne Police Department Vice and Narcotics detective (UC) and a cooperating individual (CI) engaged in a series of controlled buys from Garza. On November 7, 2012, the UC met with Garza and bought 25.7 grams of suspected cocaine for $1,300.00; on November 19, 2012, the UC bought 13.7 grams of suspected cocaine for $650.00; on November 27, 2012, the UC bought 55 grams of suspected cocaine; and on December 3, 2012, the UC met with Garza and another individual, Juarez-Cabrera, and purchased 427 grams of marijuana.

---

[1] Instead of a reply, Garza filed a motion for a summary order granting relief. (ECF No. 232). This Motion is DENIED.

On December 6, 2012, the UC and CI, both of whom were fluent in Spanish, met with Garza at a grocery store on Broadway Street in Fort Wayne, Indiana. The recorded meeting included discussions between the UC and Garza in which the UC expressed interest in buying a kilogram of cocaine for $38,500. Through text messages and recorded cellular telephone conversations between the CI and Garza, the deal was scheduled for December 11, 2012. Around 2:30 pm that day, Garza communicated with the CI that he was ready to make the sale. Garza was parked in Lowes parking lot on Lima Rd. in Fort Wayne, Indiana. Surveillance units in the area observed Garza in a 1999 blue, Chevrolet Malibu, bearing Indiana license plate 725LRE with another male, identified as Juarez-Cabrera.

At around 3:15, the UC, equipped with an electronic listening and recording device, drove to Lowes and met with Garza outside the Malibu. The two engaged in conversation and the UC requested to see the cocaine. Garza stated the cocaine was in the Malibu. The UC entered the back seat of the Malibu, Garza was in the front passenger seat, and Juarez-Cabrera was in the driver seat. After more discussion, Garza showed the UC a grayish bag containing a clear plastic bag with a white powdery substance inside located in the front seat between Garza and Juarez-Cabrera. Garza and Juarez-Cabrera then held the bag open for the UC to see and smell the cocaine. The UC then got out of the vehicle and gave the pre-determined take-down signal to the surveilling units.

Uniformed narcotics detectives and FWPD's Emergency Services Team in marked raid vests, pulled behind the Malibu. A high-speed chase ensued with Garza and Juarez-Cabrera tossing items out the window during their pursuit. This included two cell phones and the grey and black bag containing the cocaine. These items were later recovered from the roadway. Eventually, the Malibu struck a fence, the two men exited the vehicle and both were apprehended.[2]

---

[2] Juarez-Cabrera fled on foot after the Malibu struck the fence.

Garza and Juarez-Cabrera were indicted in a five-count indictment with various drug trafficking offenses. After pleading guilty to Count 5 of the indictment, Garza was found to be a career offender and his offense level was increased from 23 to 34 with a criminal history category of VI. Garza's corresponding guideline range was 188-235 months. On April 9, 2015, Garza was sentenced to 188 months imprisonment.

Garza moved for compassionate release in March 2022, asserting that due to intervening changes in the law, if he were sentenced today, he would not be a career offender. He also asserted that his incarceration and COVID-19 combined with his various health condition created a greater risk of serious disease or death than would otherwise occur in the general population. (ECF No. 195). The Court denied his motion in October 2022. (ECF No. 223). Seven months later, Garza filed the present motion re-asserting that intervening changes in the law are extraordinary and compassionate reasons for his release.

## II.     Legal Discussion

### A.     *Compassionate Release Standard*

Defendant's motion requests compassionate release. Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which allows a court to grant an inmate compassionate release if the inmate meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A). Under this provision, a court may not modify a term of imprisonment except that –

> (1) in any case --
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that—

(i) extraordinary and compelling reasons warrant such a reduction …

… and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

*1. Defendant's Sentence is not an Extraordinary or Compelling Reason for Release*

In his first request for compassionate release, Garza argued that his 188-month sentence is unreasonable given the current state of the law. He asserted that under *Johnson v. United States*, 576 U.S. 591 (2015), two of his three predicate offenses used to apply the career offender sentencing provisions would no longer be valid predicate convictions today. He contends that his advisory guideline range would be 92-115 months today. Thus, Garza's argument is that the sentencing disparity between the sentence he received and the sentence he might receive if he was sentenced today establishes an extraordinary and compelling reason to release him.[3]

In denying his motion, this Court determined that *Johnson* was a non-retroactive decision of the Supreme Court and even if it weren't, a change in the case law is not a proper basis for compassionate release. *United States v. Carr*, 2022 WL 1421441, at *1 (7th Cir. May 5, 2022) ("Changes in sentencing law are not extraordinary and compelling reasons for compassionate release."). Instead, the Court held that Seventh Circuit case law holds that these arguments should be raised on collateral attack rather than in a compassionate release petition. See *United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021). As the Court explained:

> "When deciding whether 'extraordinary and compelling reasons', 18 U.S.C. § 3582(c)(1)(A)(i), justify a prisoner's compassionate release, judges must not rely on non-retroactive statutory changes or new judicial decisions ... There's nothing 'extraordinary' about new statutes or caselaw, or a contention that the sentencing judge erred in applying the Guidelines; these are the ordinary business of the legal system, and their consequences should be addressed by direct appeal or collateral review under 28 U.S.C. § 2255. *United States v. King*, —— F. 4th ——, 2022 WL

---

[3] In his amended motion, Garza expressly abandoned his compassionate release argument related to COVID-19 and his various health conditions. Thus, the Court will not discuss its prior order on this issue.

4

>  2663277, at *1 (7th Cir. July 11, 2022) (cleaned up); see also, *United States v. Watts*, 2022 WL 2208517, at *1 (7th Cir. June 21, 2022) (The court "lacks discretion under § 3582(c)(1)(A)(i) to reduce a statutory-minimum sentence asserted to be unfairly long. The appropriate path for prisoners to contest the length of their sentences is set forth in 28 U.S.C. § 2255"); *Thacker*, 4 F.4th at 574 (holding that non-retroactive change to statutory mandatory minimum sentence was not extraordinary and compelling reason for relief under § 3582(c)(1)(A)(i)); *United States v. Martin*, 21 F.4th 944, 946 (7th Cir. 2021) (a defendant must raise any challenge to his original sentence in a direct appeal or collaterally through 28 U.S.C. § 2255, not by way of a compassionate-release motion). Thus, the mere fact that the Defendant's sentence could be lower if he was sentenced today rather than at some time in the past, is not an extraordinary and compelling reason for compassionate release.

(Opinion and Order, ECF No. 223 at 5-6).

Now, Garza asserts that this Court's decision conflicts with other Seventh Circuit precedent — *Hawkins v. United States*, 706 F.3d 820 (7th Cir. 2013) and *United States v. Black*, 999 F.3d 1071 (7th Cir. 2021). He asserts that these cases *forbid* him from bringing challenges based on intervening changes in the law in a §2255 petition: "the Court's reasoning did not account for [*Hawkins*] which specifically precludes challenges to advisory Guidelines by way of 28 U.S.C. Section 2255." (ECF No. 224 at 2). Garza is incorrect.

*Hawkins* presented the question of whether an erroneous guideline calculation discovered after the time for an appeal had run can be corrected in a postconviction proceeding. The Seventh Circuit held they cannot. Rather, *Hawkins* holds that erroneous interpretations of the guidelines at an original sentencing are only corrigible on appeal because to hold otherwise "thwarts the finality in the criminal process." *Hawkins,* 706 F.3d at 824.

Garza seizes on language in *Hawkins* that he construes permits him to bring a challenge to his guideline calculation because of a change in the law under §3582(c). *See Hawkins,* 706 F.3d at 824 (discussing non-retroactive applications of a new rule of law). But Garza misreads *Hawkins*. *Hawkins* says nothing about compassionate release. What *Hawkins* explains is that the law is fluid

and changes in the law brought about by judicial decisions occur with some frequency after an original sentence has become final. To the extent that such changes are retroactively applicable to defendants whose convictions and sentences have become final, they may provide a basis for post-conviction relief - subject to the substantive and procedural limits set by Congress. But non-retroactive challenges cannot be remedied in a § 2255 proceeding because allowing such challenges invites an end-run around the substantive and procedural limits to post-conviction relief.

Garza also points to *Black* for the proposition that "the purpose of compassionate release…is to allow for sentencing reductions when there is no statute affording such a reduction but where extraordinary and compelling reasons justify that relief." *Black,* 999 F.3d at 1075. Garza contends that because, in his view, *Hawkins* forbids him from filing a §2255 proceeding based on a non-retroactive change in the law, there is no statute that can afford him relief. So, he argues, *Black* permits him to seek that relief through a compassionate release proceeding.

As explained above, *Hawkins* did not hold that Garza cannot bring his challenge to his sentence based on a non-retroactive change in the law in a §2255 proceeding; it held that the interest in finality of the criminal process will doom such challenges when brought. Garza has a statute by which he can seek relief for legislative changes in the law. But he equates success in that proceeding with its availability. They are not the same.

The Seventh Circuit expressly told us in *Thacker* that a non-retroactive change to a sentencing scheme is not an extraordinary and compelling reason justifying compassionate release under § 3582(c)(1)(A). *Thacker*, 4 F.4th at 573; *United States v. Williams,* 65 F.4th 343, 347 (7th Cir. 2023). *Thacker* does not stray from the case law Garza cites. Under *Thacker*, § 3582(c)(1)(A) is not the place for defendants to assert non-retroactive changes in the law.

## **CONCLUSION**

For the above reasons, the Defendant's Amended Motion for Compassionate Release under 18 U.S.C. §3582(c)(1)(A) is DENIED. (ECF No. 224). Defendant's Motion for Summary Ruling (ECF No. 232) is also DENIED.

SO ORDERED on November 6, 2023.

 s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT