UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No. 1:12-CR-88-HAB |
| | ) | |
| PEDRO GARZA | ) | |

**OPINION AND ORDER**

For the third time, Defendant, Pedro Garza seeks compassionate release – this time under the recently enacted guidelines provision, U.S.S.G. §1B1.13(b)(6). (ECF No. 236). He also asserts again that his medical conditions and his rehabilitation effort support compassionate release. The Government responded in opposition (ECF No. 238), but Defendant did not reply. For the third time, the Court denies Garza's motion and provides specific guidance to the Government and to the Defendant about the filing of additional "amended" motions, such as the ones that have been filed in this case and others.

**I.      Factual and Procedural Background**

Nothing in the facts or procedure has changed since Garza's previous two attempts at compassionate release. So, the Court incorporates by reference the same factual and procedural recitation from its prior orders. (ECF Nos. 223, 233).

**II.     Legal Discussion**

**A.      *Compassionate Release Standard***

Defendant's motion requests compassionate release. Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which allows a court to grant an inmate

compassionate release if the inmate meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A). Under this provision, a court may not modify a term of imprisonment except that –

> (1) in any case --
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction …
>
> … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

While the statute does not define "extraordinary and compelling reasons," Congress tasked the United States Sentencing Commission with explaining these terms by promulgating general policy statements on the sentencing modification provisions in 18 U.S.C. § 3582(c)(1)(A). 28 U.S.C. § 994(t). Under that authority, the Sentencing Commission issued a Policy Statement on § 3582(c)(1)(A), which provides six circumstances that may provide "extraordinary and compelling reasons" for a reduction in sentence. *See* U.S. Sentencing Guidelines Manual § 1B1.13. These six circumstances are:

- certain medical circumstances of the defendant, *id.* § 1B1.13(b)(1);
- the defendant's age, *id.* § 1B1.13(b)(2);
- the defendant's family circumstances, *id.* § 1B1.13(b)(3);
- the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction, of a correctional officer, *id.* § 1B1.13(b)(4);
- any other circumstances or combination of circumstances similar in gravity to the circumstances listed above, *id.* § 1B1.13(b)(5); and
- the defendant received an unusually long sentence, *id.* § 1B1.13(b)(6).

If the defendant identifies one or more of these circumstances, the court proceeds to the second step and "exercis[es] the discretion conferred by the compassionate release statute, to

2

consider any applicable sentencing factors in § 3553(a) as part of determining what sentencing reduction to award the prisoner." *United States v. Peoples*, 41 F.4th 837, 840 (7th Cir. 2022).

### B. Defendant's Sentence is not an Extraordinary or Compelling Reason for Release

Defendant's legal argument revolves around changes to the Sentencing Guidelines since he was sentenced. He points specifically to U.S.S.G. § 1B1.13(b)(6), which allows the Court to consider changes in the law that result in "gross disparity" in sentencing. He repeats his prior arguments in his other requests for compassionate release that under *Johnson v. United States*, 576 U.S. 591 (2015), two of his three predicate offenses used to apply the career offender sentencing provisions would no longer be valid predicate convictions today. He contends that his advisory guideline range would be 92-115 months today. Thus, Garza's argument is that the sentencing disparity between the sentence he received and the sentence he might receive if he was sentenced today establishes an extraordinary and compelling reason to release him.

At the time of Garza's last request for compassionate release, there was no applicable policy statement defining the meaning of "extraordinary and compelling." But this Court explained that under *United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021), non-retroactive changes in the law did not constitute an extraordinary and compelling reason for compassionate release. After *Thacker* was decided, the Sentencing Commission issued a policy statement, including § 1B1.13(b)(6), which directly conflicts with *Thacker*'s holding. That provision reads:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

Garza argues that the policy statement trumps *Thacker* and authorizes the Court to consider changes in the law. Unfortunately for Garza and others like him, the Seventh Circuit has recently invalidated subsection (b)(6) under *United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021), finding that the Sentencing Commission exceeded its authority in adopting that subsection. *See United States v. Black*, 131 F.4th 542, 543 (7th Cir. 2025) ("[T]he Commission's attempt to [controvert *Thacker*] exceeds its statutory authority ...."[1] *Black*, following the holding of *Thacker*, conclusively determined that a change in the law "cannot serve as a basis for a defendant's eligibility [for compassionate release] by itself or in combination with other factors." *Id*. at 548. Until the Supreme Court declares otherwise, then, Defendant's argument, and all arguments hoeing the same row, must fail in this Circuit. Garza thus cannot use (b)(6) as a basis for his compassionate release.

C. *Neither Defendant's Age or Medical Conditions are extraordinary and compelling*

Next, Garza incorporates by reference his previous arguments that he has medical conditions that create extraordinary and compelling conditions for his release. Garza previously asserted that he is obese, weighing in consistently at over 300 lbs at 5'9" tall. He also asserted that he is hypertensive and has "pre-diabetes". This Court previously found that the medical records supplied by Garza demonstrated that his medical conditions are controlled and managed with medication and insulin provided by the BOP. Garza did not submit any new medical records nor conditions to this Court so the Court has little trouble upholding its prior conclusion that his medical conditions are neither extraordinary or compelling.

---

[1] Admittedly, Garza's latest request for compassionate release has not been timely ruled upon. By way of explanation, the Court became aware that the Seventh Circuit was considering the issue raised by Garza in *Black* and the Court delayed its ruling to allow for *Black* to be decided.

As for Garza's age, he is in his mid-40's. An individual's age can only be an extraordinary and compelling reason if an individual is age 65 or older. U.S.S.G § 1B1.13(b)(2). Additionally, the utilization of a defendant's age may be taken into account, only when two other conditions are also present. These two conditions are a serious deterioration in physical or mental health because of the aging process and having served at least 10 years or 75 percent of the term of imprisonment, whichever is less. *Id.* Garza does not meet these qualifications.

### D. *Defendant's Rehabilitation is not an extraordinary or compelling reason, even when considered with other factors*

Garza next asks the Court to revisit his prior arguments that his rehabilitation efforts while incarcerated establish an extraordinary and compelling reason for compassionate release. Although Garza's efforts are commendable – he received his GED and has taken advantage of educational and other opportunities – the Court only has before it records that pre-date the filing of this motion by over 2 years. On this basis alone, the Court cannot determine that Garza's rehabilitation, even if other reasons existed (and they do not), is extraordinary or compelling.

### E. *Defendant's Grounds, Considered Together, are not extraordinary and compelling*

As discussed above, none of Defendant's circumstances are extraordinary or compelling on their own. The Court has considered the reasons together and finds them no more worthy of compassionate release. *United States v. Newton*, 996 F.3d 485, 489 (7th Cir. 2021) (finding that proposed extraordinary and compelling reasons must be considered cumulatively). Unlike comorbidities, Defendant's proposed reasons do not interact in a synergistic fashion where the whole is greater than the sum of its parts. Instead, the reasons are separate, with none particularly

5

close to meeting the statutory requirements. The Court finds no extraordinary or compelling circumstances supporting release so Defendant's motion must be denied.[2]

*F. Direction to the Government and the Defendant regarding the Exhaustion Requirement*

Lastly, the Court extends a few paragraphs to the issue of exhaustion in compassionate release cases. In this case, the Government did not assert exhaustion as an affirmative defense to Garza's "amended" motion, filed over two years after his original motion. This is not an uncommon occurrence. Since the First Step Act of 2018 amended § 3582(c)(1)(A), the Government has taken inconsistent positions as to whether it invokes the affirmative defense of exhaustion. This is the Government's prerogative as *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020) and *United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021), collectively hold that exhaustion is both an affirmative defense and a mandatory claims processing rule that "if properly invoked" must be enforced. This Court, then, has taken the position that unless raised by the Government, the Court is foreclosed from considering the issue of exhaustion.

That said, the Court has noticed an increasing number of cases where it is evident (or at least questionable) that exhaustion should be invoked by the Government and is not. These cases leave the Court in the position of addressing the merits of a claim that should otherwise be foreclosed until exhaustion occurs and increases the volume of work on this Court unnecessarily.[3]

---

[2] Given the determination that Garza has not shown extraordinary and compelling reasons to justify his release, the Court need not address whether he is a danger to the community and whether the sentencing factors listed in 18 U.S.C. § 3553(a) weigh in favor of his release. *United States v. Ugbah*, 4 F.4th 595, 598 (7th Cir. 2021).

[3] The Court is cognizant that in the early compassionate release cases following enactment of the FSA, the Government and this Court often assumed exhaustion and addressed the merits of the motions. This was before *Gunn* and *Sanford* provided guidance on exhaustion of remedies. But six years post-FSA, the legal guidance on exhaustion is much clearer than it was in 2019 and the Court believes it will be a rare instance when there will be a concern about whether the facts do or do not support exhaustion.

Invoking the defense inconsistently is problematic in that it creates disparities among litigants. Sometimes on similar facts, the Government invokes the defense and other times it assumes, without a basis in the record, that the defense is satisfied. While the Court hesitates to dictate to the Government that exhaustion should be addressed in every compassionate release case (even if merely to concede the issue), it will now go on record in support of the Government strongly considering that practice.

This issue is all the more complicated because the parameters of exhaustion in this Circuit have recently been called into question, *see United States v. Reedy*, 2024 WL 5247954, at *7 (N.D. Ill. Dec. 30, 2024) (finding exhaustion under 3582(c)(1)(A) if a defendant waits 30 days before filing in the district court regardless of whether the warden issues a denial or fails to respond). Cases like *Reedy* may be the short explanation as to the inconsistent positions taken by the Government.[4] But, that too needs to be fleshed out.

---

[4] In *Reedy*, the defendant filed a request for compassionate release with the warden and was denied four days later. Reedy was provided notice of his appeal rights in the denial letter but filed his motion in the district court after waiting 30 days from the date the warden received his request. The record did not disclose whether Reedy appealed the denial by the warden. The *Reedy* court, noting that the 30 day language "is not perfectly clear," *Reedy*, 2024 WL 5247954, at *6 (quoting *United States v. Villar*, 2024 WL 2939018, at *3 (N.D. Ill. June 11, 2024)("[T]here is a question of whether [the defendant] must have completed any administrative appeals process before filing his motion or simply waited thirty days"), found that:

> …[E]xisting case law leaves ambiguous whether a defendant's ability to file a motion in the district court after "the lapse of 30 days from the receipt of [the defendant's compassionate release] request by the warden" implicitly requires, in addition to the "lapse of 30 days," the warden's failure to respond to the request." 18 U.S.C. § 3582(c)(1)(A). If the defendant's ability to file after the "lapse of 30 days" requires the warden's failure to respond, then a defendant who received a response to a compassionate release request from the warden must always appeal the decision administratively before filing in the district court.

*Id.* The court, after examining the Seventh Circuit's decisions in *Gunn* and *Sanford* and finding that those cases supplied only dicta regarding the issue, concluded that "a defendant may file a motion in the district court 30 days after the warden's 'receipt' of a defendant's compassionate release request, irrespective of whether the warden responds to the request within 30 days and whether a defendant has administrative appeals available." *Id.* (citing *United States v. Martin*, 21 F.4th 944, 945 (7th Cir. 2021).

7

This Court has warned defendants that they must take exhaustion under the compassionate release provisions seriously, see *United States v. Wilson*, 2023 WL 2523416, at *2 (N.D. Ind. Mar. 14, 2023) ("Prisoners need to take the exhaustion process seriously. Exhaustion is not and should not be considered a useless bureaucratic endeavor. It ensures that the Bureau of Prisons has a chance to "articulate [its] decision and rationale" vis-à-vis a particular request for compassionate release, thus giving the district court the benefit of BOP's input."). Now the Court tells the Government the same.

Congress's express purpose in implementing the changes to §3582(c)(1)(A) was to expand the use of compassionate release sentence reductions. *See, e.g.*, First Step Act, PL 115-391, 132 Stat 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314-02, 2018 WL 6350790 (Dec. 5, 2018) (statement by Senator Cardin, co-sponsor of the First Step Act, noting that its purpose was to "expand[s] compassionate release" and "expedite[ ] compassionate release applications"). To this end, Congress amended § 3852(c)(1)(A) to allow prisoners to directly petition courts for compassionate release, removing the BOP's exclusive "gatekeeper" role. This resulted in the two direct routes for prisoners to bring their compassionate release: (1) file a motion after fully exhausting administrative appeals of the BOP's decision not to file a motion, or (2) file a motion after "the lapse of 30 days from the receipt ... of such a request" by the warden of the defendant's facility, "whichever is earlier." 18 U.S.C. § 3852(c)(1)(A).

Congress, however, balanced its desire to increase the use of compassionate release by expressing "its intent that the BOP have the opportunity and obligation, in the first instance, to decide whether to move for compassionate release and reduce sentences for eligible inmates."

8

*United States v. Chappell*, 2020 WL 3415229, at *3 (S.D.N.Y. June 22, 2020). The Seventh Circuit emphasized this point in *United States v. Williams*:

> The exhaustion requirement is designed to allow the Bureau to bring 'a motion on the defendant's behalf,' before he moves on his own behalf. § 3582(c)(1)(A). And the Bureau cannot determine whether it should bring a compassionate-release motion if an inmate does not explain in his request the ground justifying his release. The Bureau's regulations implementing an earlier version of the statute (which did not permit inmates to move for release on their own) reinforce the necessity of this information, instructing inmates that a request for release under § 3582(c)(1)(A)(i) "shall at a minimum contain ... [t]he extraordinary or compelling circumstances that the inmate believes warrant consideration." 28 C.F.R. § 571.61(a)(1).

987 F.3d 700, 703 (7th Cir. 2021). And in light of that specific purpose, courts have construed exhaustion to require issue exhaustion, meaning that the grounds presented to the warden must be the same as the grounds presented to the district court in a subsequent motion. *See Williams*, 987 F.3d at 703; *United States v. Taylor*, 2024 WL 1538419 *1 (S.D.Ala. Apr. 9, 2024) (holding that an inmate is required to present the same or similar ground for compassionate release in a request to the BOP as in a motion to the court and concluding that any contrary approach would undermine the purpose of exhaustion). Simply put, exhaustion of remedies matters.

District courts are often constrained from reaching the merits of a case by procedural issues and, rightly so as the Court is counseled by the higher courts to decide the merits of cases only when absolutely necessary. But the Court only knows when deciding the merits is absolutely necessary when the procedural hurdles are removed. Non-precedential cases like *Reedy* present interesting questions to be resolved and, for this very reason, the Court encourages the Government to explore exhaustion in every compassionate release case before this Court.[5]

## **CONCLUSION**

---

[5] To avoid unnecessary work for the Government, in cases where exhaustion is raised by the Government, this Court will adhere to a practice of ordering separate briefing on the merits if the Court finds exhaustion is satisfied.

9

For the above reasons, the Defendant's Second Amended Motion for Compassionate Release under 18 U.S.C. §3582(c)(1)(A) is DENIED. (ECF No. 236).

SO ORDERED on June 11, 2025.

    s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT